IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PIERCE DUCHENE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 2:13-cv-01577 |
| v. ) | **ELECTRONICALLY FILED** |
| ) | |
| WESTLAKE SERVICES, LLC, ) | |
| ) | |
| Defendant. ) | |

**OPINION**

**Mark R. Hornak, United States District Judge**

Pierce Duchene initiated this action seeking relief under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. He asserts that he received unauthorized prerecorded voice calls from Defendant, Westlake Services, LLC, in violation of the TCPA. As is common for such negative expected value actions,[1] Duchene seeks Rule 23 class action certification for a class of similarly situated consumers. However, recognizing that two forthcoming Supreme Court decisions have the potential to reshape the class action and statutory standing landscape applicable to this case, Westlake moved to have this Court stay these proceedings until the resolution of those Supreme Court cases. The Court concludes that such a stay is proper.

I. **THE SUPREME COURT CASES**

The first case, *Spokeo, Inc. v. Robins*,[2] will consider "[w]hether Congress may confer

---

[1] That is, an action where a plaintiff would almost certainly spend more money litigating the case than they will likely receive in actual or statutory damages. *See* William H.J. Hubbard, *Optimal Class Size, Dukes, and the Funny Thing about Shady Grove*, 62 DePaul Law Review 693, 701 (2013) ("For an individual who has a claim that (by assumption) is meritorious, but the amount of damages she can recover is relatively small (e.g., hundreds or a few thousand dollars), it is not economically sensible to file suit individually.").

[2] 742 F.3d 409 (9th Cir. 2014) *cert. granted*, 135 S. Ct. 1892, (2015).

1

Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute."[3] *Spokeo* itself deals with the Fair Credit Reporting Act, but a ruling in *Spokeo* would likely have a direct impact other statutory damages cases, such as the present TCPA case. Though Duchene asserts that *Spokeo* has no bearing on the present litigation because there *is* an actual injury here—above and beyond the statutory violation—this claim is yet untested.[4] Westlake has not yet contested the actual injury issue because a statutory violation is sufficient to create standing under current Third Circuit law. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 763 (3d Cir. 2009). However, if *Spokeo* upends that present state of the law, questions surrounding Duchene's actual injury will slingshot to the forefront of this case, and Duchene's standing would be called into question.[5]

The second Supreme Court case, *Campbell-Ewald Co. v. Gomez*,[6] also has the potential to undermine the Court's jurisdiction over the present litigation. The relevant Questions Presented ask: "Whether a case becomes moot, and thus beyond the judicial power of Article III,

---

[3] The Question Presented in each case is drawn from the United States Supreme Court's website. *Spokeo*'s Question Presented can be found at http://www.supremecourt.gov/qp/13-01339qp.pdf; the Question Presented in *Campbell-Ewald Co. v. Gomez* can be found at http://www.supremecourt.gov/qp/14-00857qp.pdf.

[4] And, indeed, the Defendant contends that the alleged injury is quite tenuous. Apparently, Duchene was not personally paying his cell phone bill at the time of the allegedly illegal phone calls. Thus, even if Duchene could show that receiving these calls exhausted his "cell phone minutes," it is unclear how he could show that *he* was actually injured by the overused minutes. ECF 92 at 2. Still, this Court has not received merits briefing on the issue and has not had resolve it.

[5] Notably, in two similarly postured cases, district courts decided that a stay was warranted where the plaintiffs alleged a non-statutory injury in fact, but the viability of these injury arguments were unclear or untested. *See Provo v. Rady Children's Hosp. San Diego*, 2015 U.S. Dist. LEXIS 100491, *3-4 (S.D. Cal. July 29, 2015) (staying the case where, "[a]lthough not yet tested, it is unclear whether Plaintiffs are able to establish an injury-in-fact without reliance upon a violation of the FDCPA to establish statutory damages."); *Larson v. Trans Union, LLC*, No. 12-CV-05726-WHO, 2015 WL 3945052, at *8 (N.D. Cal. June 26, 2015) (staying the case where "Larson's ability to establish injury-in-fact without reliance on the FCRA's statutory damages provision has not been tested in this case").

[6] 768 F.3d 871, 873 (9th Cir. 2014) *cert. granted*, 135 S. Ct. 2311, 191 L. Ed. 2d 977 (2015).

2

when the plaintiff receives an offer of complete relief on his claim," and also "[w]hether the answer to the first question is any different when the plaintiff has asserted a class claim under Federal Rule of Civil Procedure 23, but receives an offer of complete relief before any class is certified." Duchene argues (accurately) that the facts of *Gomez* differ from the present action. In *Gomez*, the plaintiff had never moved to certify the class before the Rule 68 offer; here, Plaintiff has previously moved to certify the class as a "protective matter," but has not yet attained class certification. Still, this may well turn out to be a distinction without a difference. The Question Presented frames the issue with respect to when a "class is *certified*," rather than when a class is *requested*. Thus, the Supreme Court could rule, in the matter before it, that Westlake's Rule 68 offer in this case moots Duchene's claims and undercuts the Court's jurisdiction to hear the case.

## II. ASSESSING THE MERITS OF A STAY

Both Supreme Court cases are scheduled to be decided this Term. *Gomez* will be argued on October 14, 2015 and *Spokeo* will be argued on November 2, 2015. This Court must determine whether it is beneficial to stay the current proceedings until the Supreme Court resolves the involved questions of law. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "Central to this power is a court's ability to 'hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues.'" *Resco Products, Inc. v. Bosai Minerals Grp. Co.*, No. Civ. A. 06–235, 2010 WL 2331069, at *4 (W.D. Pa. June 4, 2010) (citing *Bechtel Corp. v. Local 215, Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir.1976)).

Other district courts in our Circuit have outlined four non-exhaustive factors to consider

3

when weighing whether to stay a case: (1) the length of the requested stay; (2) the hardship that the moving party would face if the stay were not granted; (3) the injury that a stay would cause to the non-movant; and (4) whether granting a stay would streamline the proceedings by simplifying issues and promoting judicial economy. *See Salvatore v. Microbilt Corp.*, No. 4:14-CV-1848, 2015 WL 5008856, at *1 (M.D. Pa. Aug. 20, 2015) (citing *Vasvari v. Rite Aid Corp.*, No. 09–CV–2069, 2010 WL 3328210, at *2 (M.D. Pa. Aug. 23, 2010)). Considering these factors—and in light of the reasoning in similar cases that have addressed such *Spokeo/Gomez* stay requests—a stay is proper in this case.

### A. The Length Of The Requested Stay

As numerous courts considering *Spokeo* and/or *Gomez* stay requests have noted, any stay will not be excessively burdensome or prejudicial because it will be of a short and definite duration. *See Yaakov v. Varitronics, LLC*, No. CIV. 14-5008 ADM/FLN, 2015 WL 5092501, at *3 (D. Minn. Aug. 28, 2015); *Salvatore v. Microbilt Corp.*, 2015 WL 5008856, at *1[7]; *Provo v. Rady Children's Hosp. San Diego*, 2015 U.S. Dist. LEXIS 100491, *3-4 (S.D. Cal. July 29, 2015); *Wolf v. Lyft, Inc.*, No. C 15-01441 JSW, 2015 WL 4455965, at *2 (N.D. Cal. July 20, 2015); *Boise v. ACE USA, Inc.*, No. 15-CIV-21264, 2015 WL 4077433, at *5-6 (S.D. Fla. July 6, 2015); *Larson v. Trans Union, LLC*, No. 12-CV-05726-WHO, 2015 WL 3945052, at *8 (N.D. Cal. June 26, 2015); *Ramirez v. Trans Union, LLC*, 2015 U.S. Dist. LEXIS 80692, *4 (N.D. Cal. June 22, 2015). Oral arguments are scheduled for October 14 in *Gomez* and November 2 in *Spokeo*. At the very latest, the Court will issue its opinions by the end of June, 2016—eight to nine months from now, and well sooner than was considered in all of the above cited cases. A

---

[7] Of note, in *Salvatore* the plaintiff did not oppose the defendant's motion to stay and therefore was "deemed not to oppose the stay request." *Id.* at *1. Still, the court itself "also conclude[d] that a stay of this case is appropriate for the reasons set forth below" and proceeded to conduct an extensive analysis of the propriety of a stay. *Id.*

4

definitive (at most) nine month stay will not substantially prejudice either party.

### B. Westlake's Hardship Or Injury If The Case Is *Not* Stayed

Importantly, either *Spokeo* or *Gomez* can fundamentally affect the Court's jurisdiction to hear this case. *Spokeo* may well conclude that the Plaintiff lacks standing, or, as discussed above, bring Duchene's standing directly into dispute; *Gomez* may render the case moot. As such, certain resolutions of either Supreme Court case might require an immediate dismissal by this Court.[8] *See Genesis Healthcare Corp. v. Symczyk,* 133 S. Ct. 1523, 1528, 185 L. Ed. 2d 636 (2013) (holding that "an actual controversy must be extant at all stages of review," so "if an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot."). This consideration weighs in favor of a stay. *See Hillson,* 2015 WL 4488493, at *1; *Stone,* 2015 WL 4602968, at *2; *Boise,* 2015 WL 4077433, at *5-6.

In light of *Spokeo* and/or *Gomez*'s potential impact on this litigation, "[d]efendant faces the risk of unnecessary proceedings and expenses if the case is not stayed." *Ramirez,* 2015 U.S. Dist. LEXIS 80692, at *4. *See also Pennsylvania State Troopers Ass'n v. Pawlowski,* No. 1:09–CV–1748, 2011 9114, at *1 (M.D.Pa. Jan. 3, 2011) ("[I]t is of no benefit to either party to incur substantial costs litigating an issue that the Supreme Court may well determine is not actionable in the course of these proceedings."). Even though the bulk of discovery has been completed in this case, any period of litigation—especially class action litigation—is expensive for the parties involved. *See Yaakov,* 2015 WL 5092501, at *3 (staying proceedings after a significant amount

---

[8] It is unclear what would happen if this Court moves forward and certifies a class, then, subsequently, the Supreme Court rules in *Gomez* that a Rule 68 offer *does* moot a case before certification. Would this Court have to "look back" to the time before the certification and declare that it lacks jurisdiction because the named Plaintiff's claim was mooted before the class was certified? Could the class continue forward, irrespective of the now illuminated jurisdictional issues prior to certification? It is unclear. What does seem clear, however, is that the jurisdictional issues get even dicier if this class is certified before a definitive ruling in *Gomez*. This, too, seems to favor staying the case.

5

of discovery had been completed); *Larson*, 2015 WL 3945052, at *8 (same). The Supreme Court may soon say that this Court lacks jurisdiction to resolve this case at all. The inquiry, then, is whether the harm from further litigation now is outweighed by any harm to Duchene if a stay is ordered.

### C. Duchene's Hardship Or Injury If The Case *Is* Stayed

Initially, it should be noted that the considerable resources spent litigating the case to this point are of little consequence to the present decision. The relevant inquiry when considering a stay is the marginal harm that a plaintiff *will incur* if a stay is imposed, not the harm that a litigant *has already incurred* up to this point. These past costs are already sunk for all parties.

Still, Duchene identifies two primary harms that he will incur if the case is not stayed. First, that additional "unwarranted delay will only risk witnesses' memories." *Id.* at 10. And second, that Duchene has a right to a speedy resolution of his claims. *Id.*

The first concern—risking the memory of the witnesses—does not appear meaningfully relevant, especially considering that substantial discovery has already been completed, including depositions securing witness testimony. *See Yaakov*, 2015 WL 5092501, at *4 ("[A]lthough the risk of lost or destroyed evidence is always a concern whenever pending litigation is stayed, the threat here is insufficient to offset the practicalities of staying the case until the Supreme Court provides direction."); *Larson*, 2015 WL 3945052, at *8 (finding it "implausible that a one-year delay will cause either of these things to occur," especially where "many key witnesses have already been deposed; their memories can be refreshed at trial by their deposition transcripts, or, if they are unavailable, their deposition testimony can be read into the record."). A relatively short delay of definite duration would not likely affect the availability of evidence or the memory of witnesses, especially where we have "no specific facts or reasoning [that] indicate otherwise."

6

*Larson*, 2015 WL 3945052, at *8.

Second, Duchene asserts that he has a right to a speedy resolution of his rights, and therefore any undue delay is implicitly harmful. To be sure, he and all other litigants possess that right. However, having to wait eight to nine months to continue litigation is not, itself, sufficiently prejudicial to outweigh the very plain benefits of staying the case, particularly when the issues pending at the Supreme Court go to this Court's power to hear the case. Numerous cases are in accord. *See Salvatore*, 2015 WL 5008856, at *1; *Stone*, 2015 WL 4602968, at *2; *Wolf*, 2015 WL 4455965, at *2; *Boise*, 2015 WL 4077433, at *6. Here, the Court agrees that the "possible prejudice to Plaintiff that will result from a stay is minimal." *Ramirez*, 2015 U.S. Dist. LEXIS 80692, *4.

### D. Promoting Judicial Economy

Though considerations of judicial economy take a backseat to the considerations addressed above, they are still relevant to the stay inquiry. Here, interests of judicial economy favor a stay. There is a real possibility that one (or both) of the cases will result in this Court losing jurisdiction to hear the case before it, given the Questions Presented in the Supreme Court. If that happens, any judicial resources spent on this matter between now and then would essentially be to no avail. *See Salvatore*, 2015 WL 5008856, at *2; *Stone*, 2015 WL 4602968, at *2; *Hillson*, 2015 WL 4488493, at *1; *Boise*, 2015 WL 4077433, at *5-6; *Provo*, 2015 U.S. Dist. LEXIS 100491, *4. Thus, this consideration also favors a stay.

### III. CONCLUSION

Both *Gomez* and *Spokeo* have the direct possibility of undercutting, or at least seriously calling into question, the Court's jurisdiction in this case. Because it appears that Plaintiff will not incur any significant prejudice if a short stay of definite duration is imposed, the present stay

is continued until resolution of the referenced Supreme Court cases.

An appropriate Order will issue.

                                                Mark R. Hornak
                                                United States District Judge

Dated: October 13, 2015

cc: All counsel of record